IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

**STATE OF TENNESSEE v. ROBERT GENTRY GALBREATH**

**Direct Appeal from the Circuit Court for Bedford County**
**No. 14,926     F. Lee Russell, Judge**

---

**No. M2001-02495-CCA-R3-CD - Filed July 26, 2002**

---

A Bedford County jury convicted the Defendant of twelve counts of obtaining a controlled substance, Hydrocodone, by fraud during the period from August 15, 2000 through September 8, 2000. The trial court sentenced the Defendant to twelve years on each count and imposed a fine of $2,000 for each count. The trial court ordered that counts 1-4 run concurrently; that counts 5-8 run concurrently, but consecutive to counts 1-4; and that counts 9-12 run concurrently, but consecutive to all other counts, for an effective sentence of thirty-six years. On appeal, the Defendant contends that the evidence is not sufficient to support eleven of his twelve convictions for fraud and that the trial court erred in sentencing him to thirty-six years in prison. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Larry F. Wallace, Jr., Shelbyville, Tennessee (on appeal), and Richard Dugger, Shelbyville, Tennessee (on appeal and at trial), for the Appellant, Robert Gentry Galbreath.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William M. McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. FACTS**

The following evidence was presented at the Defendant's trial: On September 7, 2000, Eckerd's pharmacist Chris Crafford received a message from a Dr. Barry Beck in Nashville calling in a prescription for a Terry Sanders. The call-in prescription was for Hydrocodone. Since Crafford was unfamiliar with Dr. Beck, he called Dr. Beck's office to verify the prescription. Dr. Beck was

not in at the time; however, a nurse in his office told Crafford that Terry Sanders was not a patient of Dr. Beck's. Later, Dr. Beck called Crafford and confirmed that he did not call in such a prescription. Crafford then called Agent Thomas Biele of the 17th Judicial District Drug Task Force and told him that someone posing as Dr. Beck had called in a prescription. Agent Biele told Crafford to fill the prescription and to call him as soon as someone attempted to pick it up.

The next day, Agent Biele received a call that someone was in the store to pick up the prescription. Agent Biele immediately went to the store. The clerk who had called Agent Biele gave Biele a physical description of the person picking up the prescription. Agent Biele saw the Defendant pay for and receive the prescription. Agent Biele then followed the Defendant outside, observed the Defendant take the prescription bottle out of the bag, and observed the Defendant attempt to throw away the bag. Agent Biele asked the Defendant for the crumpled white bag and identified himself as an agent for the 17th Judicial District Drug Task Force. Agent Biele then asked the Defendant for identification, and the Defendant replied that he did not have any. Agent Biele searched the Defendant and found pieces of paper on the Defendant's person on which were written the names and Drug Enforcement Agency (DEA) numbers[1] of Dr. Beck and another physician, Dr. Mack, as well as the names and phone numbers of Terry Sanders and Kevin Green. The Defendant then identified himself as Robert Galbreath from Columbia, Tennessee and stated that the agent "had him" and that he would fully cooperate.

The Defendant was arrested and transported to the police station where he was read his Miranda rights before being interrogated. The Defendant agreed to talk to police and signed a waiver of his rights. The Defendant informed Agent Biele that he had fraudulently obtained prescription drugs at Eckerd's on previous occasions, using three different names: Terry Sanders, Kevin Green, and Tammy Stewart. According to the Defendant, to obtain fraudulent prescriptions, he went to doctors' offices, copied their DEA numbers off of prescription pads, and then called pharmacies using these numbers. Agent Biele checked the phone numbers for the names written on the pieces of paper found on the Defendant's person and discovered that the numbers did not correspond to the doctors' names. Agent Biele then returned to the Eckerd's store and requested data sheets on the names provided by the Defendant. Agent Biele found twelve prescriptions prescribed by Dr. Beck and Dr. Mack for Terry Sanders, Kevin Green, and Tammy Stewart. They were prescribed on August 15, 17, 19, 22, 23, 26, 27, 29, and 30, as well as on September 1, 2, and 8, 2000. Dr. Beck and Dr. Mack confirmed by phone and by letter that none of the three individuals were their patients.

Following the trial, a sentencing hearing was held on August 2, 2001. Certified and uncertified copies of seven convictions for forgery, ten convictions for passing forged instruments and one conviction for criminal attempt were offered into evidence. The Defendant admitted to attempting to smuggle drugs into jail on more than one occasion. He also admitted that his probation had been revoked on more than one occasion. At the time of the sentencing hearing, the Defendant had twelve other prescription fraud charges in another county pending against him, for which he was

---

[1] Chris Crafford testified that DEA numbers are identification numbers assigned by the federal government to doctors permitting them to legally prescribe controlled substances.

out on bond.  The Defendant was also on supervised probation for another fraudulent prescription charge when he committed the crimes in the instant case.

Since the Defendant had seven prior felony convictions, the trial court classified him as a career criminal.  As a career criminal convicted of a Class D felony, see Tenn. Code Ann. § 53-11-402(b)(1), the Defendant was subject to a sentencing range of twelve to sixty years on each of the twelve counts of obtaining a controlled substance by fraud.  The trial court sentenced the Defendant to twelve years on each count, with counts 1-4 running concurrently, counts 5-8 running concurrently, and counts 9-12 running concurrently.  Each of the three sets of sentences, counts 1-4, counts 5-8, and counts 9-12, were to run consecutively with each other.  The Defendant thus received an effective sentence of thirty-six years.  The Defendant also received a fine of $2,000 on each count.

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

The Defendant first argues that the evidence was not sufficient to convict him of the eleven prior instances of obtaining prescription drugs by fraud in violation of Tennessee Code Annotated § 53-11-402(a)(3).  Tennessee Code Annotated § 53-11-402(a) provides, in pertinent part, as follows:

> It is unlawful for any person knowingly or intentionally to:
>
> . . . .
>
> . . . [a]cquire or obtain, or attempt to acquire or attempt to obtain, possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.  Any person who violates this subdivision may, upon first conviction, have such sentence suspended and may as a condition of the suspension be required to participate in a program of rehabilitation at a drug treatment facility operated by the state or a comprehensive community mental health center.

Id.  The Defendant argues that Agent Biele arrested him on the sole occasion when he sought to fraudulently obtain prescription drugs and that the evidence presented to support convictions for the other eleven occasions was circumstantial.  The Defendant further argues that the jury could not have found him guilty beyond a reasonable doubt based solely on circumstantial evidence.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The evidence presented during the Defendant's trial was sufficient beyond a reasonable doubt to support the verdict of the jury. Here, the jury heard proof that on the date of the Defendant's arrest, Agent Biele witnessed the Defendant commit the alleged offense just prior to arresting him. At the time of his arrest, the Defendant had pieces of paper in his pocket on which the DEA numbers of Dr. Beck and Dr. Mack were written. Furthermore, the Defendant admitted to Agent Biele that he had obtained prescriptions from Eckerd's prior to this instance. Moreover, Dr. Beck and Dr. Mack confirmed that the names the Defendant had used were not patients of either doctor. Finally, Agent Biele confirmed the existence of a total of twelve fraudulent prescriptions obtained using the two physicians' names written on pieces of paper found on the Defendant's person and using patient names provided by the Defendant to Agent Biele. We conclude that this is sufficient evidence to support all twelve of the Defendant's convictions.

### B. Sentencing

The Defendant argues that the trial court erred in ordering him to serve his sentences consecutively. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any

statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In this case, the Defendant challenges the determination of the trial court to run his sentences consecutively. The Defendant argues that this determination by the trial court is contrary to the purpose of Tennessee Code Annotated § 40-35-102, which is primarily to "promote justice." The Defendant believes that he should have received a single twelve-year sentence to be served consecutive to any other sentence he might have had pending at the time from other cases.

Whether concurrent or consecutive sentences should be imposed is within the sole discretion of the trial court. See Tenn. Code Ann. §40-20-111(a). A trial court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that one or more of certain criteria apply. See Tenn. Code Ann. § 40-35-114(b)(1)-(7). In this case, the trial court applied the following factors: (1) "[t]he defendant is an offender whose record of criminal activity is extensive," Tenn Code Ann. § 40-35-115(b)(2), and (2) "[t]he defendant is sentenced for an offense committed while

on probation . . . ." Id. § 40-35-115(b)(6).  The trial court found that the Defendant's history of prior convictions and the commission of all twelve of these crimes while he was on probation warranted the determination that the sentences run consecutively.  The presentence report supports these determinations by the trial court: The presentence report reveals that the Defendant has a criminal history of numerous prior convictions and that the Defendant was on probation at the time that he committed the offenses in this case.  We thus conclude that imposition of consecutive sentences in this case was proper.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE